IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DE LAGE LANDEN FINANCIAL    :    CIVIL ACTION
SERVICES, INC.              :
                            :
          v.                :
                            :
MIRAMAX FILM CORP.          :    NO. 06-2319

MEMORANDUM AND ORDER

McLaughlin, J.                              March 16, 2009

De Lage Landen Financial Services, Inc. ("DLL"), sued
Miramax Film Corp. ("Miramax") to recover on an alleged contract
among itself, Miramax, and MWB Copy Products, Inc. ("MWB").
Miramax defended against DLL's claim by contending that it did
not assent to the contract on which DLL sued.  Miramax then
brought a third-party complaint against MWB, alleging that MWB
perpetrated a fraud on Miramax when MWB's Vice President of
Sales, Robert Kaminsky, falsified contract documents that MWB
sent to DLL.  DLL then brought claims against MWB for fraud,
breach of contract, and breach of warranty.

On September 23, 2008, the Court issued a Memorandum
and Order in which it ruled on the various claims filed by the
parties against one another.  With respect to Miramax's claim of
fraud against MWB, the Court found for Miramax.  The Court then
ordered that Miramax could submit a petition for attorneys' fees
from MWB in connection with the litigation between DLL and
Miramax.  See De Lage Landen Fin. Servs. v. Miramax Film Corp.

["DLL"], No. 06-2319, 2008 WL 4348074, at *18 (E.D. Pa. Sept. 23, 2008).  Miramax submitted its petition on October 8, 2008 (Docket No. 75).  MWB filed an opposition on October 24, 2008 (Docket No. 79), and Miramax filed a reply brief on November 6, 2008 (Docket No. 89).  In its opposition, MWB argues that the Court incorrectly decided that attorneys' fees are recoverable in this case, that attorneys' fees are not recoverable for the entirety of Miramax's litigation with DLL, i.e., for Miramax's counterclaim, and that the legal fees and costs claimed by Miramax are not reasonable.

The Court concludes that attorneys' fees are recoverable in this case for Miramax's litigation of both its defense to DLL's claims and its counterclaim against DLL.  It further concludes that the fees requested by Miramax are reasonable.  Miramax's petition is therefore granted.

I.   Background

This case concerns a dispute over a contract for the rental of copy machines by Miramax.  DLL, a financial services company, sued Miramax in June 2006, alleging that Miramax owed it additional payments for rental of the copiers at issue, and that Miramax had kept the copiers after the expiration of its lease.  Miramax then sued MWB, the actual lessor of the copy machines, for fraud, breach of contract, and breach of warranty, based on

the fact that Robert Kaminsky, MWB's Vice President of Sales, had falsified documents, leading both Miramax and DLL to sign payment and rental agreements that each believed the other had signed and executed.  Miramax also brought a counterclaim against DLL for a declaratory judgment that its versions of the payment and rental agreements were binding.

The Court held a bench trial on the parties' claims on December 10-11, 2007.  On September 23, 2008, the Court issued a Memorandum and Order, in which it found for Miramax on DLL's claims against Miramax and on Miramax's claims against MWB.  The Court also found for Miramax on its counterclaim for declaratory judgment against DLL.[1]

To establish the damages element of its fraud claim against MWB, Miramax argued that Kaminsky's misrepresentations caused DLL to mistakenly believe it had an enforceable agreement with Miramax, which, as a result, led to this lawsuit and to Miramax's attorneys' fees incurred in its defense of the suit. See DLL, 2008 WL 4348074, at *13.  MWB responded that an action for fraud is not an established exception to the general rule that a litigant is responsible for its own attorneys' fees absent an agreement.  The Court disagreed, finding that Pennsylvania

---

[1] Although not relevant to Miramax's petition, the Court also found for DLL on its claims for breach of contract and breach of warranty against MWB and for MWB on DLL's fraud claim.

3

recognizes § 914(2) of the Restatement (Second) of Torts.  <u>Id.</u> at *14.  That provision provides:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

The Court also cited a 1955 case from the Third Circuit, in which the Court of Appeals decided that Pennsylvania courts would follow the rule set forth in § 914(2), and thus would recognize a claim for fraud damages in the amount of the attorneys' fees expended on a suit with a third party occasioned by the fraudulent party's actions.  <u>Id.</u> (citing <u>Seaboard Sur. Co. v. Permacrete Const. Corp.</u>, 221 F.2d 366, 371-72 (3d Cir. 1955)).[2]  The Court noted, however, that such damages would not include the fees incurred in litigating the fraud claim itself.  <u>Id.</u> at *14.

        Having decided that Pennsylvania courts would permit recovery of attorneys' fees as an item of damages in these circumstances, the Court ordered that Miramax could submit to the Court a petition to recover from MWB the attorneys' fees that Miramax expended in defending against DLL's claims.  <u>Id.</u> at *18.

---

[2] It is important here to distinguish between attorneys' fees qua attorneys' fees and attorneys' fees as a measure of fraud damages.  It is the latter which is permitted as compensation under § 914(2), and which is at issue here.

4

As previously stated, Miramax submitted such a petition, which MWB has opposed.

II.   Discussion

In its opposition to Miramax's petition, MWB argues that attorneys' fees are not recoverable in this case, or, at least, that fees are not recoverable for the entirety of the litigation between DLL and Miramax - specifically, for Miramax's counterclaim against DLL.  MWB also argues that Miramax's claimed legal fees and costs are not reasonable.  The Court will first address whether attorneys' fees are recoverable here, and if so, for which portions of the litigation between DLL and Miramax they are recoverable.  The Court will then discuss whether Miramax's claimed fees are reasonable.

A.   Whether and to What Extent Attorneys' Fees are Recoverable in This Case

MWB's opposition to Miramax's petition presents four main arguments against an award of attorneys' fees to Miramax: (1) that the Court incorrectly decided that § 914(2) allows any recovery in this case; (2) that Miramax's fees were not incurred in a "separate, earlier action"; (3) that Miramax's legal fees were not incurred "only because of" Kaminsky's fraud; and (4) that Miramax cannot recover legal fees in connection with its

counterclaim against DLL.[3]  None of these arguments succeeds.
Miramax can thus recover fees for the entirety of its litigation
with DLL.

> 1.  The Court Correctly Decided that § 914(2) Allows
>     Recovery of Counsel Fees in this Case

MWB's first argument against Miramax's recovery of
attorneys' fees is that the Court incorrectly applied § 914(2) to
the present case, and that recovery of attorneys' fees is only

---

[3] MWB also asserts that Miramax never raised § 914(2) before
the Court's Memorandum and Order, and that MWB thus did not have
an earlier opportunity to raise its objections.  It asserts that
MWB has waived its ability to rely upon § 914(2) by failing to
invoke it at summary judgment, at trial, or in its post-trial
brief.  See MWB Opp. 6 n.1.  This argument fails.  Miramax may
not have specifically invoked § 914(2) by name, but it did
identify DLL's lawsuit and the attorneys' fees incurred therein
as items of damage for its fraud claim earlier in this
litigation.  See Third-Party Compl. ¶ 64 (Docket No. 10) ("As a
direct and proximate result of MWB's fraud, Miramax has suffered
injury and loss, including without limitation losses incident to
defense of the DLL Complaint."); id. ¶ 67 ("As a direct and
proximate result of MWB's fraud, Miramax has sustained losses,
including without limitation time, expenses, attorneys' fees and
costs it has incurred and may hereafter incur in defending
against the Complaint of DLL . . . ."); Miramax's Mem. in Supp.
of Mot. for Summ. J. 29 (Docket No. 47) ("Miramax has suffered
damage as a result of Kaminsky's misrepresentations.  That damage
comes primarily in the form of costs Miramax has incurred in
defending the claims of DLL in this lawsuit.  Kaminsky's
misrepresentations and forgeries appear to have caused DLL to
mistakenly believe it had an enforceable agreement against
Miramax.  This mistaken belief led to this lawsuit and led to
Miramax being forced to expend costs in proving that DLL's
agreements are not enforceable against Miramax.").  To the extent
that § 914(2) may have been mentioned by name for the first time
in the Court's September 23 Memorandum and Order, it was only as
the legal justification for the relief which Miramax has
requested throughout this litigation.

available under the "American Rule" if provided for by contract or statutory exception.  MWB Opp. 4 (citing <u>Mosaica Acad. Charter Sch. v. Commonwealth</u>, 813 A.2d 813, 822 (Pa. 2002)).  In <u>Mosaica</u>, however the Pennsylvania Supreme Court stated that, under the American Rule, "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties <u>or some other established exception</u>."  813 A.2d at 822 (emphasis added).

Although Pennsylvania's statutory counsel fee provisions, 42 Pa. Cons. Stat. Ann. §§ 1726, 2503, do not include § 914(2)'s "tort of another" exception, the Pennsylvania Supreme Court has "favorably cited" § 914(2);[4] and, as this Court already noted in its September 23 Memorandum and Order, the Court of Appeals for the Third Circuit has ruled that Pennsylvania courts would recognize a claim for fraud damages under § 914(2) in the amount of the attorneys' fees expended on a suit with a third party occasioned by the fraudulent party's actions.  <u>See</u> <u>Fleck v. KDI Sylvan Pools, Inc.</u>, 981 F.2d 107, 117 (3d Cir. 1992) (citing

---

[4] The <u>Mosaica</u> Court did state that the American Rule was "embodied" in 42 Pa. Cons. Stat. Ann. § 1726(a)(1).  However, it did not state that the statute displaced any common law exceptions to the American Rule, and proceeded to determine whether there was either "express statutory authorization <u>or</u> some other established exception for the imposition of attorneys' fees."  813 A.2d at 823 (emphasis added).

<u>Vattimo v. Lower Bucks Hosp., Inc.</u>, 465 A.2d 1231, 1235 (Pa. 1983)); <u>Seaboard</u>, 221 F.2d at 371-72.[5]

In <u>Seaboard</u>, the Court of Appeals considered an appeal from an award, including attorneys' fees, to a plaintiff surety company who had written a performance bond on behalf of the defendant in reliance on the defendant's fraudulent representations. After the defendant failed to perform, the plaintiff was sued on the bond by a third party to whom the defendant had owed performance. After settlement of the suit between the plaintiff and the third party, the plaintiff sued the defendant for the amount of the settlement and the amount of fees expended in the investigation and preparation for trial in the earlier suit. <u>Seaboard</u>, 221 F.2d at 369, 371.

---

[5] As for MWB's contention that "the Superior Court has recognized that 'there is no established exception for fraud,'" the case that MWB cites for that proposition, <u>Koffman v. Smith</u>, was not a case in which the plaintiff sued the defendant to recover fees incurred for the purpose of investigating the claims of a third party, but rather, was a case involving a claim for attorneys' fees incurred in the plaintiff's suit for fraud against the defendant under the Pennsylvania Uniform Fraudulent Conveyance Act. <u>See</u> <u>Koffman v. Smith</u>, 682 A.2d 1282, 1285 (Pa. Super. Ct. 1996). That is not the case before the Court. The Superior Court's declaration in that case that "there is no established exception which permits recovery of attorneys fees in an action for fraud" is thus inapposite to a claim for attorneys' fees as tort damages under § 914(2). <u>See</u> <u>id.</u> at 1292. As the Court has already explained, Miramax is not permitted to recover attorneys' fees for the prosecution of its fraud claim against MWB, but rather, only for those fees incurred in connection with its defense of DLL's claims. <u>See</u> <u>DLL</u>, 2008 WL 4348074, at *18.

The Third Circuit considered, on appeal, whether the trial court had erred by allowing the jury to consider counsel fees as an item of damages.  The Court of Appeals held that attorneys' fees were an appropriate item of damages, noting that the case before it was not "a case where a plaintiff is asserting a claim and a defendant is resisting that claim, but rather, a case where the plaintiff is seeking to recover money spent in investigating a claim made by a third party."  Seaboard, 221 F.2d at 371-72.  Such a situation, the court held, was expressly covered by § 914(2), with which the court decided that Pennsylvania courts would agree.  Id. at 372.

As this Court has already stated, there is no indication that Seaboard is not still good law.  DLL, 2008 WL 4348074, at *14.  To the contrary, courts in this district have cited Seaboard with approval more recently.  See Lexington Ins. Co. v. Forrest, 263 F. Supp. 2d 986, 1004 (E.D. Pa. 2003); Guadagnini v. LaGioia, No. 92-1323, 1996 WL 431830, at *5 (E.D. Pa. July 31, 1996).  MWB has not provided any authority to the contrary.  Nonetheless, MWB argues that the Court should deny recovery of attorneys' fees under a § 914(2) theory of recovery because "it does not appear that any Pennsylvania state appellate court has invoked [§ 914(2)] to affirm an imposition of attorneys' fees as damages against a third-party defendant in a fraud action."  MWB Opp. 4.  That no appellate court has so

acted, however, does not establish that Pennsylvania state
appellate courts have concluded that the Third Circuit's decision
in Seaboard is incorrect or otherwise inconsistent with
Pennsylvania law.[6]

The Court has already found that Seaboard, and
§ 914(2), are applicable to the present case.  The Court has not
found MWB liable for attorneys' fees expended in Miramax's
prosecution of its fraud claim against MWB, but rather, only for
the attorneys' fees occasioned by the suit brought against
Miramax by DLL.  MWB has not provided any authority to suggest
that the Court is incorrect in finding that Seaboard and § 914(2)
remain applicable to this case.  Accordingly, the Court's limited
award of attorneys' fees is appropriate.


        2.   Miramax Was Not Required to Bring an Earlier,
             Separate Proceeding

MWB's second argument for the impropriety of attorneys'
fees in this case is that Miramax is not seeking to recover fees
incurred in an earlier, "separate proceeding."  Under
Pennsylvania law, MWB argues, § 914(2) awards are only proper
when the fees were incurred "in separate actions by or against

_____

        [6] To the contrary, Corace v. Balint, which MWB cites in a
later portion of its brief, discusses Seaboard, and states that
"the operation of [§ 914] is demonstrated by Seaboard."  210 A.2d
882, 888 (Pa. 1965).  Although Corace is also not recent, it does
show that the Pennsylvania Supreme Court has cited Seaboard's
interpretation of Pennsylvania law with approval.

third persons, when the separate actions were caused by the tortfeasor."  MWB Opp. 5 (quoting Corace v. Balint, 210 A.2d 882, 888 n.7 (Pa. 1965)).  That MWB was brought into this action by way of third-party claims is not enough, according to MWB; there must have been an entirely separate action.

     As Miramax points out in its reply brief, § 914 does not contain any requirement of an entirely separate proceeding. In addition, although not cited by Miramax, there are other courts that have rejected such a requirement.  See Mut. Fire, Marine & Inland Ins. Co. v. Costa, 789 F.2d 83, 89 (1st Cir. 1989) (rejecting the notion that § 914 contains a "prior proceeding" requirement and stating that "more recently, . . . courts have clarified that it is not necessary for the litigation against the third party to have been separate from the litigation between the plaintiff and the defendant"); Blair v. Boulger, 336 N.W.2d 337, 340 (N.D. 1983) ("The critical distinction as we see it is not between present and prior proceedings, but rather between litigation against a third party caused by the wrongful acts of another and litigation against the wrongdoer to recover attorney fees for having to defend against a third party.").[7]

---

[7] MWB cites a case from the District of Nebraska, Scottsdale Ins. v. Am. Re-Ins. Co., No. 06-16, 2008 WL 2001750, at *11 (D. Neb. May 6, 2008), in support of its contention that an earlier action was required, quoting language that "there must have been an earlier action" and that "[t]he third-party claims in [the] case are not the same as an earlier action which is required under § 914(2)."  In that case, however, the defendant sought to

As for Pennsylvania courts, to the extent that the language of the <u>Corace</u> footnote cited by MWB might appear to support a "separate proceeding" requirement, a closer reading of that case reveals the opposite.  In <u>Corace</u>, the Pennsylvania Supreme Court considered two cases, civil actions 646 and 1636, both which were related to the ownership of a certain piece of realty, the deed to which, after the plaintiff's name had been forged thereon by her husband, ended up in the hands of the defendants.  The plaintiff brought action 646, alleging that her name was forged and that the deed held by the defendants was a nullity.  The defendants then brought action 1636 against the party who had promised to deliver the deed to them, alleging breach of their agreement to convey a warranty deed free of encumbrances.  <u>Corace</u>, 210 A.2d at 884.

The footnote referred to by MWB states that an award of attorneys' fees would be inappropriate for the latter action directly brought by the defendants - action 1636 - because § 914 only permits the recovery of fees "incurred in separate actions

---

recover attorneys' fees from the <u>plaintiff</u> for having to allege third-party claims against the party whose allegedly fraudulent conduct led to the lawsuit.  Specifically, the defendant argued that the filing of the plaintiff's lawsuit was the continuation of the third party's fraud.  <u>See</u> <u>id.</u>  In this case, that would be the equivalent of Miramax seeking attorneys' fees from DLL for continuing MWB's fraud by filing this lawsuit in the first instance.  That is not the situation here, however:  Miramax is seeking fees from the third-party, MWB, for the litigation brought by DLL.  Accordingly, <u>Scottsdale</u> is inapposite.

by or against third persons, when the separate actions were caused by the tortfeasor." Id. at 274 n.7.  This language does not, in context, show that a separate and earlier action is a prerequisite to an award of attorneys' fees, but rather, underscores the fact that § 914 provides recovery related to situations where a party has been forced to sue or defend a third party as a result of the tort of another, and not for fees incurred in prosecuting a fraud action itself.[8]

That § 914(2) does not contain a "separate-and-earlier-action requirement" is further supported by MWB's position that the purpose of such a requirement would be to allow the party seeking the benefit of § 914(2) to notify the alleged perpetrator of the fraud to defend the proceeding.  MWB Opp. 5 (quoting Restatement (Second) of Torts § 914 cmt.b).  However, as Miramax points out, the Restatement commentary's discussion of notice does not establish notice as a prerequisite to the recovery of attorneys' fees, but rather, states that a defendant "can notify the other to defend the proceeding."  Miramax Reply 2 n.1.  As Miramax further points out, even if notice were required, MWB was

---

[8] The Corace court did ultimately reverse the lower court's award of attorneys' fees in connection with action 646, the action more analogous to this case, although not for failure to bring a separate proceeding.  Rather, the court found that the party who had committed the tort that was the legal cause of litigation in action 646 was the plaintiff's husband, who had forged the deed, and not the party who had promised to deliver the deed to the defendants.  See Corace, 210 A.2d at 888-89.

made fully aware of the claims against Miramax through Miramax's third-party complaint, and, if MWB had wanted to assume Miramax's defense, it had every opportunity to do so.  Instead, MWB denied all liability.  Id.

MWB has not shown that Miramax was required to bring its request for attorneys' fees in an entirely separate civil action from the one in which it actually incurred those fees. Section 914 requires only that the attorneys' fees be incurred in the pursuit or defense of a claim that has arisen due to the tort of another.  Here, Miramax has been forced to litigate with DLL as a result of MWB's fraud.  The Court has limited recovery to the expenses incurred in connection with those claims only.  Such recovery is appropriate under § 914(2).

### 3. Miramax's Legal Fees and Costs Were the Result of Kaminsky's Fraudulent Conduct

MWB's third argument against an award of attorneys' fees to Miramax is that § 914(2) allows the recovery of attorneys' fees only where the costs of litigating with the third party exist "only because of a tort of another."  MWB Opp. 6 (quoting Restatement (Second) Torts § 914 cmt.b).  MWB argues that DLL's action was brought, at least in part, because Miramax continued to use the copy machines at issue after Miramax gave notice of its termination of the lease agreements.  At the very least, MWB argues, Miramax should be precluded from recovering

14

the part of its counsel fees that are attributable to defending its own acts.  MWB Opp. 7.

Section 914(2) allows recovery of attorneys' fees to the extent that a party, "through the tort of another," has been required to protect its interests by bringing or defending an acting against a third party.  The Court has already found that Miramax did not breach any contract by which it was bound, and that it acted in accordance with the version of the contracts with which it was required to comply.  See DLL, 2008 WL 4348074, at *7, 9-11.  As Miramax points out, the Court has also found that Miramax terminated its agreements in accordance with what Miramax understood to be their terms and sought repeatedly to tender all of the equipment back to DLL.  Miramax Reply 3 (citing DLL, 2008 WL 4348074, at *10-11).  If anything, DLL brought suit because DLL understood the parties to have different agreements that entitled DLL to further payments.  The reason for the parties' differing understandings of their agreement, and thus, the litigation in this case, was the fraud perpetrated by Kaminsky, and not any independent action on Miramax's part.  Thus, MWB's third argument fails.

> 4.    Miramax Can Recover Legal Fees and Costs in
>        Connection with Its Counterclaim Against DLL

MWB argues that even if Miramax may recover attorneys' fees under § 914(2), it should not be permitted to recover the

portion of its counsel fees incurred in connection with the litigation of its counterclaim against DLL because the counterclaim was neither "necessary" to its defense against DLL's claims, nor "sufficiently distinct" from the third-party complaint against MWB.  MWB Opp. 8-9.  MWB cites no binding authority for these arguments, and instead argues that Miramax's "mere desire" to obtain added "assurance" through securing declaratory judgments does not prove the "necessity" of having to pursue those claims, and that Miramax could have obtained the relief it sought through its defense alone.  <u>Id.</u> at 8.

Miramax responds that its counterclaim was in fact necessary, as MWB's fraud "required" it "to act in the protection of [its] interests," as permitted by § 914(2).  Miramax further responds that the Federal Rules "permit a counterclaim '[w]henever an actual controversy exists between the parties and the circumstances indicate that declaratory relief may be an appropriate method for the settlement of the conflict.'"  Miramax Reply 4 (quoting 6 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1406 (2008)).  Citing a case from this district, Miramax claims that a defendant in a breach of contract action has a right to counterclaim for declaratory judgment as to whether the contract was terminable or enforceable, and that such a counterclaim would not be dismissed as superfluous.  <u>Id.</u> (citing <u>Iron Mountain Sec. Storage Corp. v.</u>

16

<u>Am. Specialty Foods, Inc.</u>, 457 F. Supp. 1158, 1162 (E.D. Pa. 1978)).

In <u>Iron Mountain</u>, the plaintiff sought a declaratory judgment that the defendant had to pay a certain price under a particular agreement.  The defendant counterclaimed for a declaratory judgment that it did not have to pay that price.  The defendants moved to dismiss the counterclaim, on the basis that it was "superfluous" because it was just a "mirror image" of the plaintiff's claim.  <u>Iron Mountain</u>, 457 F. Supp. at 1161.  The court refused to dismiss the counterclaim, stating that:

> I know of no rule preventing the assertion of a counterclaim merely because the theory relied upon is the converse of that in the complaint.
>
> Defendants would have every right to seek a judgment declaring that their interpretation of the contract was the correct one.  A ruling adverse to the plaintiff on plaintiff's claim would merely result in a judgment that plaintiff was not entitled to the relief requested; although it might logically follow from that judgment that defendants' interpretation of the contract was the correct one, defendants would not be entitled to a judgment to that effect unless they specifically requested one.

<u>Id.</u> at 1161-62.  Although the procedural posture of <u>Iron Mountain</u> differed from the present case, and although the court there also refused to dismiss the counterclaim because the counterclaim sought additional damages for breach of the contract, the case's reasoning is persuasive, and has been cited with approval by

17

other courts. <u>See</u> <u>Stickrath v. Globalstar, Inc.</u>, No. 07-1941, 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008); <u>Univ. Patents, Inc. v. Kligman</u>, Nos. 89-3525, 90-0422, 1991 WL 165071, at *1 (E.D. Pa. Aug. 23, 1991); <u>Blue Cross & Blue Shield of Kan.</u>, No. 89-4114, 1990 WL 41403, at *1 (D. Kan. Mar. 23, 1990); <u>see also</u> <u>Kvaerner U.S. Inc. v. Kemper Envt'l Ltd.</u>, No. 06-403, 2006 WL 3064104, at *3 (W.D. Pa. Oct. 26, 2006) ("[T]he declaratory judgment [counterclaim] gives the [defendants] the ability to have the Court rule on these issues if, for example, the plaintiff were to voluntarily dismiss its claim.").[9]

    In addition, a number of courts have decided that a court should only strike or dismiss declaratory judgment counterclaims as superfluous when it is clear that there is a "complete identity of factual and legal issues" such that they serve no "useful purpose." <u>See</u> <u>Berger v. Seyfarth Shaw, LLP</u>, No. 07-5279, 2008 WL 2468478, at *2 (N.D. Cal. June 17, 2008); <u>Stickrath</u>, 2008 WL 2050990, at *4; <u>Pettrey v. Enter. Title</u>

---

    [9] The Court of Appeals for the Third Circuit has stated, more generally, that "[a] counterclaim may entitle the defendant in the original action to some amount of affirmative relief; a defense merely precludes or diminishes the plaintiff's recovery. Although the facts underlying some defenses might also support a counterclaim, not all counterclaims are valid defenses. The two concepts are distinct and must be kept so." <u>Riverside Mem'l Mausoleum, Inc. v. UMET Trust</u>, 581 F.2d 62, 68 (3d Cir. 1978). The Court of Appeals has also noted that "the fundamental policy" regarding Rule 13 counterclaims is "the expeditious resolution of all controversies growing out of the same transaction or occurrence or between the same parties in a single suit." <u>Aldens, Inc. v. Packel</u>, 524 F.2d 38, 51 (3d Cir. 1975).

Agency, Inc., No. 05-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006) (citing Aldens, Inc. v. Packel, 524 F.2d 38, 51-52 (3d Cir. 1975)).

The defendants also cite the Third Circuit's decision in Keenan v. Philadelphia, 983 F.2d 459 (3d Cir. 1992), to argue that "[e]ven time spent in proceedings before a different tribunal can be 'necessary' to the defense of another litigation." Miramax Reply 4. In that case, the Court of Appeals interpreted Supreme Court precedent as permitting a district court, in the proper exercise of its discretion, to include "the time spent pursuing optional administrative proceedings" in a fee award where the work was "'useful and of a type ordinarily necessary' to secure the final result obtained [from] the litigation." Id. at 474 (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986)).

In view of the combined weight of these authorities, MWB has provided no reason not to allow Miramax to recover for the attorneys' fees associated with the litigation of its counterclaim. In this case, a ruling against DLL on DLL's claims could merely have resulted in a judgment that Miramax did not breach DLL's version of the contract, and not necessarily an affirmative declaration that DLL's version of the contract was invalid. Such a judgment would also not necessarily require the

Court to decide that DLL was bound by Miramax's version of the program agreement, and Miramax may not have been entitled to a judgment to that effect unless it specifically requested one. Miramax's counterclaim thus ensured that even if, for example, DLL were to have voluntarily dismissed its breach of contract claim, Miramax would have the opportunity to have its version of the program agreement declared binding by the Court.[10]  Miramax's counterclaim thus served a useful purpose for Miramax in protecting its interests and securing a final result related to litigation over the copier agreement.

---

[10] As for MWB's argument that the counterclaim was identical to the claim against MWB in the third-party complaint, Miramax argues that if MWB had not been amenable to third-party process in this case for any reason, Miramax would still have been forced to litigate its defense and counterclaim against DLL and to prove MWB's fraud, and it would still have had the right to bring a separate proceeding against MWB to recover attorneys' fees. Thus, to the extent that there may have been some overlap in the proofs between Miramax's counterclaim and the third-party complaint, that did not in any way change the extent of the litigation Miramax was forced to engage in with DLL as a result of MWB's fraud, and the third-party complaint should not in any way limit Miramax's recovery.  Miramax Reply 6.  To add to Miramax's argument, although the counterclaim may be asserted in identical terms against both DLL and MWB, the relief sought with respect to each is different.  That is, a declaratory judgment that DLL is bound by Miramax's version of the contract is separate relief from a judgment that MWB is so bound.  As stated in <u>Iron Mountain</u>, although these rulings might logically flow from one another, a party must specifically request such relief in order to have such judgment entered.

B.    <u>Whether Miramax's Claimed Legal Fees are Reasonable</u>

The last issue to be decided is whether the legal fees and costs requested by Miramax are reasonable.  Miramax filed a thorough and comprehensive petition for attorneys' fees and costs in the amount of $268,889.71.  The Court finds that the requested fees and costs are reasonable.

In general, determining the amount of a reasonable attorneys' fee requires multiplying a reasonable hourly rate by the number of hours reasonably expended.  <u>United Auto. Workers Local 259 Social Sec. Dep't v. Metro Auto Ctr.</u>, 501 F.3d 283, 290 (3d Cir. 2007); <u>Washington v. Phila. County Court of Common Pleas</u>, 89 F.3d 1031, 1035 (3d Cir. 1996).  A reasonable hourly rate is generally calculated according to the prevailing market rates in the community for attorneys of equivalent skill and experience, for which the prevailing party bears the burden of proof.  <u>Washington</u>, 89 F.3d at 1035-36.  In determining a reasonable rate, a court may not rely on its own sense of what is reasonable or proper, but must rely upon the factual record.  <u>Coleman v. Kaye</u>, 87 F.3d 1491, 1509-10 (3d. Cir. 1996).

MWB's objections to the reasonableness of the fees and costs fall into five categories:  (1) lack of specificity in the billing detail; (2) excessive time spent on a task; (3) routine tasks performed by senior employees; (4) redundancy; and (5) improper billing for costs.  The Court has reviewed MWB's

fourteen pages of objections and overrules each of the objections.

The Court of Appeals for the Third Circuit has explained how specific a fee petition should be:

> A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates."  However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."  We found sufficient specificity where the computer-generated time sheet provided "the date the activity took place."

Keenan, 983 F.2d at 473 (internal citations omitted).  The Court has reviewed each item that MWB contends lacks specificity and concludes that each of them contains sufficient information to meet the above-quoted standard.

Nor does the Court see any overbilling or excessive time spent here.  Miramax's legal team consisted of two attorneys and legal assistants.  This litigation went on for two years.  Miramax's lawyers did a very good job of avoiding duplication of effort and delegating each task to the team member with the appropriate level of skill and experience.

The Court also finds that counsel for Miramax did a conscientious job of allocating fees between the case involving DLL and the case involving MWB.  Time entries devoted to Miramax's third-party complaint against MWB were excluded from

22

Miramax's petition.  Settlement or mediation activities were reduced by fifty percent because these discussions involved all three parties, whereas trial preparation, trial, and post-trial briefing were reduced by ten percent.  That is reasonable.  Very little emphasis at trial was on the fraud claim against MWB.

The detail on costs appears to the Court to be sufficient and proper.

MWB also argues that Miramax has not shown that the hourly billing rates reflect prevailing local market rates.  The Court disagrees.  Miramax has more than adequately established this point.  The lawyers for Miramax were skilled, experienced, and efficient in their work, and their rates were in accord with prevailing market rates for the services they performed.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DE LAGE LANDEN FINANCIAL          :       CIVIL ACTION
SERVICES, INC.                    :
                                  :
                v.                :
                                  :
MIRAMAX FILM CORP. and MWB        :
COPY PRODUCTS, INC.               :       NO. 06-2319

<u>ORDER</u>

AND NOW, this 16th day of March, 2009, upon
consideration of Miramax Film Corp.'s Petition for an Award of
Legal Fees and Costs (Docket No. 75), MWB Copy Products's
Opposition (Docket No.79), and Miramax's Reply thereto (Docket
No. 89), and for the reasons stated in the accompanying
memorandum of law, IT IS HEREBY ORDERED that Miramax's petition
is GRANTED.  The damages owed by MWB to Miramax for the
litigation between Miramax and DLL are set in the amount of
$268,889.71.  This case is now closed.


                              BY THE COURT:


                              <u>/s/ Mary A. McLaughlin</u>
                              MARY A. McLAUGHLIN, J.